**CARGO PARTNER AG, Plaintiff,**

**v.**

**ALBATRANS INC., et al., Defendants.**

**No. 01CIV.2609(DAB)(DFE).**

United States District Court,
S.D. New York.

March 13, 2002.

Stephen M. Harnik, New York City, for plaintiff Cargo Partners AG.

Howard A. Winter, Hoguet Newman & Regal, LLP, New York City, for defendant Albarans Inc.

Robert Erlanger, New York City, for defendant Chase, leavitt (Custom House Brokers), Inc.

### ADOPTION OF REPORT AND RECOMMENDATION

BATTS, District Judge.

On November 21, 2001, Magistrate Judge Douglas F. Eaton issued a Report and Recommendation recommending that this Court grant the Albatrans, Inc. ("Albatrans" or "Defendant") Motion to Dismiss Counts I–VI of the Plaintiff's Complaint. *See* 28 U.S.C. § 636(b)(1)(C). With respect to these Counts Magistrate Judge Eaton noted that the Plaintiff could, without applying for leave of court, amend its Complaint as a matter of course. *See* Report at page 91, n. 3 (explaining that a motion to dismiss is not a responsive pleading pursuant to Rule 15 of the Federal Rules of Civil Procedure). Magistrate Judge Eaton also recommended that this Court grant Summary Judgment in favor of Albatrans on Count VII of the Complaint. The Court is in receipt of Plaintiff's Objections to Magistrate Judge Eaton's Report and Recommendation as well as the Defendant's Response thereto. Plaintiff submitted a Reply in violation of this Court's Individual Rules that will not be considered by this Court.

28 U.S.C. § 636(b)(1)(C) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C).

Plaintiff commenced this civil action to recover money allegedly owed to it by Defendants Albatrans and Chase, Leavitt (Custom House Brokers), Inc. ("Chase, Leavitt") for services that Plaintiff allegedly provided to Chase, Leavitt. The facts in this matter are sufficiently set forth in Magistrate Judge Eaton's Report and Recommendation and will not be repeated here.

At the outset the Court notes that Plaintiff does not object to the recommendation that this Court grant the Albatrans Motion for Summary Judgment on Count VII. *See* Pl.'s Objections at 2, n. 2 (withdrawing Count VII). Plaintiff does object, however, to the recommended dismissal of Counts I–VI. Plaintiff argues (1) that Magistrate Judge Eaton incorrectly interpreted the requirements for pleading the existence of a *de facto* merger, (2) that Judge Eaton failed to address the possibility that the asset purchase at issue in this case was designed to evade federal law, (3) that Judge Eaton ignored the procedural posture of the cases cited in that section of the Report that recommends the dismissal of Counts I–V, and (4) that Count VI

should not be dismissed since disputed issues of material fact exist with respect to whether the Albatrans and Chase Leavitt transaction was in fact fraudulent. .

The Court has conducted a de novo review of the portions of the Report and Recommendation to which Plaintiff has objected and finds no error. Nevertheless, the Court finds it necessary to address the Plaintiff's first objection in some detail. Plaintiff argues that Judge Eaton erroneously concluded that in order to plead the existence of a de facto merger there must be a continuity of the selling corporation (evidenced by the same management, personnel, assets and physical location), a continuity of stock holders, a dissolution of the selling corporation, and the assumption of liabilities by the purchaser.[1] *See* Pl.'s Objections at 5–6; Report at pages 96–97 (citing *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.,* 775 F.2d 38, 42 (2d Cir.1985) as adopting the definition of de facto merger set forth in *Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F.Supp. 834, 839 (S.D.N.Y.1977)). Further, the Plaintiff argues that even if the Second Circuit's decision in *Arnold* did imply that all four factors are required in order to plead a de facto merger, any such holding would not be binding upon courts of this Circuit if New York State courts have ruled to the contrary, as Plaintiff argues that they have. *See* Pl.'s Objections at 6. The Plaintiff relies principally on two decisions from the New York Appellate Divisions, *Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc.,* 275 A.D.2d 243, 712 N.Y.S.2d 526 (N.Y.App. Div.2000) and *Fitzgerald v. Fahnestock &*

*Co., Inc.,* 286 A.D.2d 573, 730 N.Y.S.2d 70 (N.Y.App.Div.2001). According to Plaintiff, the existence of these two decisions alone demonstrates that Judge Eaton erred in his conclusion that all of the above-mentioned requirements of a de facto merger must be pled in contract actions.[2] *See* Pl.'s Objections at 8. Plaintiff overstates the importance of these Appellate Division cases.

█ "The role of a federal court sitting in diversity is to construe and apply state law as ... the state's highest court would." *Bull & Bear Group, Inc. v. Fuller,* 786 F.Supp. 388, 390 (S.D.N.Y.1992) (quoting *City of Johnstown v. Bankers Standard Insurance Co.,* 877 F.2d 1146, 1153 (2d Cir.1989) (internal quotations omitted)). In determining the law of the State of New York " '[w]here, the law ... is uncertain or ambiguous, [federal courts must] carefully predict how the highest court of the state would resolve the uncertainty or ambiguity.' " *Elliott Associates, L.P. v. Banco de la Nacion,* 194 F.3d 363, 370 (2d Cir.1999) (quoting *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir.1994)). Although the best indicators of how it would decide are often the decisions of lower state courts, a federal court is free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues. *Id.* (citations and quotations omitted); *see also Cowen & Co. v. Tecnoconsult Holdings Ltd.,* No. 96 Civ. 3748, 1996 WL 391884, at *4 n. 3 (S.D.N.Y. July 11, 1996) ("Although [a district court] may look to lower court

---

1. Although Judge Eaton found that all four elements of a de facto merger must be plead, he concluded that when determining whether the existence of a de facto merger has been plead sufficiently it is appropriate to apply a flexible as opposed to a formulaic approach. *See* Report at page 99.

2. Both of theses cases are cited and discussed in Judge Eaton's Report and Recommendation. *See* Report at page 110.

decisions for guidance on questions of state law, [it] is bound only by decisions by the New York Court of Appeals and the Court of Appeals for the Second Circuit."); *see generally Harris v. Joint Plumbing Industry Board,* 474 F.Supp. 1284, 1287 n. 4 (S.D.N.Y.1979) (stating that "when the highest court of the state has not spoken, the decision of an intermediate state court is an important 'datum' to be considered in construing state law." (citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 477, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967))); *Banks v. Yokemick,* 144 F.Supp.2d 272, 285 (S.D.N.Y.2001) (noting that "[t]hough no settled doctrine has been articulated in the Second Circuit to guide the district court treatment of state court dictum, other circuits have declared firmly that federal courts interpreting state law must give appropriate consideration to any clear expressions of intent concerning the application of state statutes by the state's highest court[ ], even if such statements may be deemed dicta" (citing *Union Pacific R.R. Co. v. Reilly Indus., Inc.,* 215 F.3d 830, 840 (8th Cir.2000))).

While it is true that the New York Appellate cases cited by Plaintiff in his Objections merit consideration and are indeed an important "datum" to be considered, these cases are not binding on this Court. After conducting a de novo review of the Plaintiff's first objection this Court agrees with Judge Eaton's careful, thoughtful, and thorough analysis in which he concludes that the "the New York Court of Appeals ... would apply the traditional 'de facto merger' exception in cases involving the claims of trade creditors, and would not adopt a definition of 'de facto merger' which omitted the requirement of ownership continuity." *See* Report at page 112.

Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

(1) The Report and Recommendation of Magistrate Judge Eaton be and the same hereby is approved, ratified and adopted in its entirety.

(2) Plaintiff shall file its Amended Complaint, if any, no later than 45 days from the date of this Order. Failure to do so shall constitute a waiver of that right. In the event that Plaintiff chooses to file an Amended Complaint, Defendants named therein shall either move or answer within 30 days from the date that the Amended Complaint is filed with the Court.

(3) Since this Court has Granted the Albatrans Motion for Summary Judgment with respect to Count VII of the Complaint, and since the Plaintiff seeks to withdraw that Count, Plaintiff is precluded from alleging the same cause of action contained in Court VII of the Plaintiff's original Complaint.

(4) Any Amended Complaint must also set forth adequately what events took place in the State of New York such that the Southern District of New York is the appropriate venue for this civil action. Further, the Amended Complaint should also allege facts sufficient to establish that this Court has personal jurisdiction over each named Defendant.

SO ORDERED

## REPORT AND RECOMMENDATION TO JUDGE BATTS

EATON, United States Magistrate Judge.

TABLE OF CONTENTS

I. BACKGROUND FACTS ............................................92

II. LEGAL ANALYSIS ..............................................92

 A. Legal Standards........................................92
 B. Application of New York Law ...........................93
 C. Successor Liability.....................................93
 1. The Four Exceptions to the General Rule of Non–Liability ...............93
 2. The Basis of the "Mere Continuation" and "De Facto Merger" Exceptions ....................................................94
 3. Mere Continuation ..................................95
 4. De Facto Merger ...................................96
 (a) The Traditional Definition of a De Facto Merger....................96
 (b) Expanded Successor Liability in Products Liability Cases ...........105
 (c) In a Contract Case Brought by a Trade Creditor, Should the "De Facto Merger" Exception Be Broadened to Include a Transfer with No Continuity of Ownership? .......................109
 (d) Adequacy of the Complaint's Allegations as to De Facto Merger.....112
 5. Conclusion as to Count I ............................114
 D. Counts II to V .......................................115
 E. Fraudulent Conveyance ................................115
 F. Bulk Transfer Act ....................................117
 G. Claims on Behalf of Affiliates .........................117

III. CONCLUSION AND RECOMMENDATION ........................118

Plaintiff Cargo Partner AG brings this diversity action on behalf of itself and four affiliates to recover amounts due for services provided to defendant Chase, Leavitt (Custom House Brokers), Inc.[1] ("Chase Leavitt"). Plaintiff seeks recovery from Chase Leavitt and also from defendant Albatrans, Inc., which subsequently purchased most of Chase Leavitt's assets. The seven-count Complaint alleges that Albatrans is liable on the grounds of (1) successor liability (Count I, and also Counts II to V which are dependent on Count I), (2) fraudulent conveyance under New York's Debtor and Creditor Law, §§ 273, 276 and 278 (Count VI), and (3) failure to comply with New York's Bulk Transfer Act, NYUCC §§ 6–101 *et seq.* (Count VII).

Albatrans has moved to dismiss the Complaint as against it pursuant to Rule 12(b)(6), Fed.R.Civ.P. Alternatively, Albatrans requests the Court to treat this motion as one for summary judgment. Both parties have submitted affidavits.

The issues raised on this motion relate almost exclusively to the question of whether Plaintiff has shown a basis for imposing liability on Albatrans for Chase Leavitt's debt to Plaintiff.[2] The validity of Plaintiff's claims against Chase Leavitt is not at issue on the present motion.

I recommend that the motion to dismiss be granted with respect to the claims alleging successor liability (Counts I to V) and fraudulent conveyance (Count VI). Pursuant to Rule 15(a), Fed.R.Civ.P., Plaintiff may file an amended complaint as a matter of course.[3]

---

1. This is the name as stated in the Complaint. The name is stated as "Chase Leavitt (CHB), Inc." in the Asset Purchase Agreement between Chase Leavitt and Albatrans. Exhibit B to 4/25/01 Affidavit of Giovanni Chiarelli.

2. There is an additional issue relating to the claims made by Plaintiff on behalf of its affiliates. *See* page 117 below.

3. Rule 15(a), Fed.R.Civ.P., provides that a party may amend a complaint once as a mat-

I recommend that the motion for summary judgment be granted with respect to the Bulk Transfer claim (Count VII).

## I. BACKGROUND FACTS

This section sets forth the background facts alleged in the Complaint. Factual allegations relating specifically to the individual Counts will be set forth in the discussion of those Counts. Citations, unless otherwise identified, are to paragraphs of the Complaint.

1. Plaintiff, a common carrier for hire, is an Austrian stock company, with its principal place of business in Austria. ¶ 1.

2. Defendant Chase Leavitt is a Maine corporation with offices and registered agent in Portland, Maine. Upon information and belief, at all relevant times, it transacted business and/or was and is doing business within the jurisdiction of our Court. ¶ 3.

3. Defendant Albatrans is a New York corporation with its principal place of business in Jamaica, New York. ¶ 2.

4. Chase Leavitt retained Plaintiff to provide freight forwarding services. ¶ 6. Plaintiff and it affiliates provided such services to Chase Leavitt at various times from November 5, 1999 through February 6, 2001, as reflected in attached invoices.[4] ¶¶ 6(a), (b) and (c); Exhibits A, B, and C. Remaining unpaid are the sums of $234,800.93 plus 6,511.50 Austrian schillings.[5] ¶ 7.

5. Upon information and belief, on or about February 7, 2001, Chase Leavitt transferred all or substantially all of its assets to Albatrans. ¶ 8.

## II. LEGAL ANALYSIS

Albatrans has moved to dismiss the Complaint as against it or, in the alternative, for summary judgment.

### A. *Legal Standards.*

With respect to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations set forth in the Complaint, and must read the Complaint liberally, drawing all reasonable inferences in Plaintiff's favor. *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir.2000). The court may dismiss the Complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

With respect to any claim based on allegations of fraud, the allegations must meet the specificity requirements of Rule 9(b), Fed.R.Civ.P.

If, with respect to any Count, the Court moves beyond the Complaint (and documents incorporated therein by reference) to consider the affidavits and exhibits submitted by the parties in support or opposition to the motion, then the motion should

---

ter of course at any time before a responsive pleading is served. A motion to dismiss a complaint under Rule 12 is not a responsive pleading. *Rose v. Associated Universities, Inc.*, 2000 WL 1457115, * 3 (S.D.N.Y. Sep.28, 2000) (Batts, J.). Nor is a motion for summary judgment. *Harlee v. Hagen*, 538 F.Supp. 389, 392 (E.D.N.Y.1982). Thus, Plaintiff does not require the Court's leave to file an amended complaint.

**4.** Paragraph 6 of the Complaint refers only to "plaintiff," but some of the invoices in Exhibits A, B and C are in the name of its affiliates, and Plaintiff's brief, at page 1, confirms that some of the services were provided by its affiliates.

**5.** These total figures allegedly take into account credits for services provided by Chase Leavitt to Plaintiff and it affiliates, as reflected in attached invoices. ¶¶ 6(d), (e) and (f); Exhibits D, E and F.

be treated as a motion for summary judgment in accordance with Rules 12(c) and 56, Fed.R.Civ.P. *Groover v. West Coast Shipping Co., Inc.,* 479 F.Supp. 950 (S.D.N.Y.1979) (Sweet, J.).

A motion for summary judgment under Rule 56 should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c). The court is required to examine the pleadings and the affidavits in the light most favorable to the party opposing the motion. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994).

In support of its motion, Albatrans submitted an Affidavit of Giovanni Chiarelli, its Managing Director ("Chiarelli Aff."). The Asset Purchase Agreement (the "Purchase Agreement") pursuant to which Albatrans purchased the assets of Chase Leavitt is attached as Exhibit B to the Chiarelli affidavit. Plaintiff submitted an opposing Declaration of Stefan Krauter, Plaintiff's Chairman ("Krauter Decl."), and Albatrans then submitted a Reply Affidavit of Mr. Chiarelli ("Chiarelli Reply Aff.").

## B. *Application of New York Law.*

■ In a diversity case, the court must apply the choice of law rules of the forum state—in this case New York—to determine which state's substantive law governs the issues. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry. *American Fuel Corp. v. Utah Energy Development Co.,* 122 F.3d 130, 134 (2d Cir. 1997). In the case at bar, both parties have briefed the issues under New York law and thereby have consented to the application of the law of the forum state. *Thompson Kernaghan & Co. v. Global Intellicom, Inc.,* 1999 WL 717250, * 2 (S.D.N.Y.1999) (Cote, J.).[6]

## C. *Successor Liability.*

Count I of the Complaint, which is against Albatrans only, seeks a declaration that Albatrans has "successor liability" for Chase Leavitt's debt to Plaintiff.

■ 1. *The Four Exceptions to the General Rule of Non–Liability.* The general common-law rule is that a corporation that merely purchases the assets of another corporation is not liable for the seller's debts and liabilities. *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 244–45, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195 (1983), citing 19 C.J.S. Corporations § 1380 and 15 Fletcher *Cyclopedia of the Law of Private Corporations* § 7122 (rev. ed.).[7] (Fletcher, perm. ed. rev. vol.1999, is hereinafter referred to as "Fletcher"). There are four well-established exceptions. The

---

**6.** In any event, it appears that New York courts would find that New York substantive law governs the issue of Albatrans' liability. Albatrans is a New York corporation with its principal place of business in New York. The Purchase Agreement, pursuant to which Albatrans purchased the Chase Leavitt assets, states that it is to be governed by New York law. The record does not reveal any other jurisdiction with greater, or even equal, contacts to the transactions at issue.

**7.** *Schumacher,* a tort (products liability) case, speaks of tort liability, but the general common-law rule it refers to also applies to liability for other debts and obligations. *See* Fletcher § 7122.

purchaser is liable for the obligations of the seller if (1) the purchaser expressly or impliedly agrees to assume such obligations, or (2) there was a consolidation or merger of the seller and the purchaser, or (3) the purchaser is a mere continuation of the seller, or (4) the transaction is entered into fraudulently in order to escape liability for such obligations. *Schumacher,* 59 N.Y.2d at 245, 464 N.Y.S.2d at 440, 451 N.E.2d 195:

> Plaintiff contends that Albatrans has successor liability on the grounds (i) that there was a de facto merger of Chase Leavitt and Albatrans, and (ii) that Albatrans is a mere continuation of Chase Leavitt. Pl.Mem. pp. 4–11.[8] Count I of the Complaint alleges (on information and belief) the following facts as the basis for such successor liability:
>
> (a) Albatrans purchased all or substantially all of Chase Leavitt's assets. ¶ 8.
>
> (b) There has been substantial continuity of Chase Leavitt's business operations following the transfer; telephones are answered "Albatrans Chase Leavitt." Albatrans continues to pursue the same, or substantially the same, business formerly pursued by Chase Leavitt, with the same, or substantially the same, premises, work force, and supervisory personnel; Albatrans has given a five-year employment contract to Alison Leavitt, the President of Chase Leavitt. ¶ 10.

For the reasons stated below, I conclude that Complaint's allegations are insufficient to state a claim for successor liability under any of the exceptions.

2. *The Basis of the "Mere Continuation" and "De Facto Merger" Exceptions.* The general rule (that the purchaser of a corporation's assets does not become liable for the seller's obligations) reflects the principle that liabilities adhere to the corporate entity. In a merger or corporate reorganization, the corporate identity of the predecessor is absorbed by the surviving corporation; the predecessor's shareholders maintain their interest in the seller's assets through their ownership of the surviving corporation's stock, and the survivor becomes liable for the predecessor's liabilities. In a bona fide asset sale, the seller maintains its own corporate identity; the seller's shareholders do not retain an interest in the transferred assets, and the seller's creditors must continue to look to the seller (and the consideration it received) to satisfy their claims.

The "mere continuation" and "de facto merger" exceptions originated in cases where the seller's shareholders retained their interest in the transferred assets through an ownership interest in the purchasing corporation, while freeing the assets from the claims of the seller's creditors by disguising the transaction as an asset sale.[9] In such cases, the courts de-

---

**8.** The Complaint also appears to rely on the "continuity of enterprise" exception adopted by some other states for products liability cases where the new owner continues the business largely intact. *See* Cplt. ¶ 10, citing Fletcher § 4880 at n. 3 & 4. (Note 3 relates to the four traditional exceptions. Note 4 is a cross reference to sections discussing the "continuity of enterprise" exception.) Plaintiff's brief does not assert that the "continuity of enterprise" exception is applicable to the case at bar. However, because this addition-

al exception is related to New York cases expanding the "de facto merger" exception, I discuss it at pages 105–06 below in connection with de facto merger.

**9.** *See, e.g., E.I. du Pont De Nemours & Co. v. Smith,* 252 F. 491, 494 (4th Cir.1918); *United States Fidelity & Guaranty Co. v. Citizens Nat. Bank,* 13 F.2d 213, 222 (D.N.M.1924); *Drug, Inc. v. Hunt,* 35 Del. 339, 362, 168 A. 87, 96 (1933); *Ruedy v. Toledo Factories Co.,* 61 Ohio App. 21, 29, 22 N.E.2d 293, 296 (1939). *See also Glynwed, Inc. v. Plastimatic, Inc.,* 869

termined that the form of the transaction did not accurately portray its substance, and they imposed successor liability upon the purchaser.

Judge Gertner, in *National Gypsum Company v. Continental Brands Corp.*, 895 F.Supp. 328, 336–338 (D.Mass.1995), reviewing numerous cases where courts found a "mere continuation" or "de facto merger," summarized them by stating that "courts would scrutinize corporate asset transfers to determine whether they permitted shareholders to retain the benefits of their ownership interest while leaving creditors without a remedy." *Id.* at 337.

■■■ 3. *Mere Continuation.* The "mere continuation" exception refers to a continuation of the selling *corporation* in a different form, and not merely to a continuation of the seller's business. It applies where a purported asset sale is in effect a form of corporate reorganization. *Schumacher*, 59 N.Y.2d at 245, 464 N.Y.S.2d at 440, 451 N.E.2d 195, citing *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y.1977), and *McKee v. Harris–Seybold Company*, 109 N.J.Super. 555, 264 A.2d 98 (Law Div.1970), *aff'd.*, 118 N.J.Super. 480, 288 A.2d 585 (App.Div. 1972).

In *Ladjevardian*, Judge Lasker said:

For this exception to come into operation "the purchasing corporation must

represent merely a 'new hat' for the seller." *McKee v. Harris–Seybold Co.*, supra. That is, it is not simply the business of the original corporation which continues, but the corporate entity itself. *National Dairy Products v. Borden*, 363 F.Supp. 978 (D.Wis.1973). *A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer. Klober-danz [v. Joy Manufacturing Co.*, 288 F.Supp. 817 (D.Colo.1968)]. What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale.

431 F.Supp. at 839 (emphasis added). *Accord, Graham v. James*, 144 F.3d 229, 240 (2d Cir.1998). In *Schumacher*, the New York Court of Appeals made clear that this requires actual dissolution of the seller, stating:

The exception refers to corporate reorganization, however, where only one corporation survives the transaction; the predecessor corporation must be extinguished.... Since [the seller] survived the instant purchase agreement as a distinct, albeit meager, entity, the Appellate Division properly concluded that [the purchaser] cannot be considered a mere continuation of [the seller].

59 N.Y.2d at 244, 464 N.Y.S.2d at 440, 451 N.E.2d 195.[10]

F.Supp. 265, 271 (D.N.J.1994) (citing cases); *National Gypsum Company v. Continental Brands Corp.*, 895 F.Supp. 328, 336–338 (D.Mass.1995) (citing cases); Phillips, *Product Line Continuity and Successor Corporation Liability*, 58 N.Y.U. L.Rev. 906, 909 (1983) (hereinafter "Phillips, *Successor Liability* "); the concepts of "mere continuation" and "de facto merger" were also applied to assess taxes and (as to "de facto merger") to protect the interests of dissenting shareholders. *Id.*

**10.** This requirement is strictly applied under New York law. An allegation that the seller

has become a mere shell is not sufficient. *See, e.g., Sweatland v. Park Corp.*, 181 A.D.2d 243, 245, 587 N.Y.S.2d 54, 55 (4th Dept.1992); *Wensing v. Paris Industries–New York*, 158 A.D.2d 164, 167, 558 N.Y.S.2d 692, 694 (3d Dept1990); *Diaz v. South Bend Lathe, Inc.*, 707 F.Supp. 97, 100 (E.D.N.Y.1989) (McLaughlin, J.); *Marenyi v. Packard Press Corporation*, 1994 U.S.Dist. LEXIS 14190 *30–32 (S.D.N.Y.1994) (Katz, M.J.); *Freeman v. Complex Computing Company*, 931 F.Supp. 1115, 1121–22 (S.D.N.Y.1996) (Kaplan, J.), *aff'd in part, vacated in part on other grounds*, 119 F.3d 1044 (2d Cir.1997).

The Complaint does not allege that Chase Leavitt has dissolved, or that it is to be dissolved as part of the transaction. Accordingly, the Complaint fails to allege facts sufficient to support a finding of successor liability under the "mere continuation" exception as defined by New York law.

Since the absence of an allegation as to the dissolution of Chase Leavitt is dispositive with respect to the "mere continuation" basis for successor liability, it is unnecessary to consider the Complaint's lack of an allegation that Albatrans has the same, or even any of the same, shareholders or directors as Chase Leavitt.[11]

4. *De Facto Merger.* The answer with respect to de facto merger is less clear. The Complaint alleges a transaction in which the seller's business was transferred virtually intact, but without any of the seller's shareholders having an ownership interest in the purchaser. A complaint alleging only that the purchaser has continued the seller's business is insufficient to meet the traditional requirements for a de facto merger. (See section (a) below.) However, New York courts have, in recent years, expanded the "de facto merger" exception in products liability cases, holding that a de facto merger could be found even where there was no ownership continuity. (See section (b) below.) Subsequent cases have not clearly ruled on whether this expanded definition of "de facto merger" is applicable beyond the tort area. (See section (c) below.)

Thus, the essential question in the case at bar is whether the expanded "de facto merger" exception applied in products liability cases—permitting a de facto merger to be found in the complete absence of ownership continuity—is applicable outside the tort area. In order to answer this question, it will be helpful to review the definition of "de facto merger" as traditionally applied under New York law, and the basis for the expansion of successor liability in the products liability area.

(a) *The Traditional Definition of a De Facto Merger.* "A *de facto* merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger." *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.,* 775 F.2d 38, 42 (2d Cir.1985) (citing *Ladjevardian*). *See also Bowers v. Andrew Weir Shipping, Limited,* 27 F.3d 800, 806 (2d Cir.1994), where the Second Circuit said: "It is quite clear that a *de facto* merger is no different conceptually from an ordinary merger, except for the fact that there has not been 'compliance with the statutory requirements for a merger' [quoting *Arnold* ]."

*Schumacher* does not specifically discuss the requirements for the "de facto merger" exception.[12] However, its citation of *Ladjevardian* (S.D.N.Y.1977) and *McKee* (Superior Court of New Jersey, Law Div. 1970) with respect to the definition of a "mere continuation" suggests that we should also look to those cases for a definition of "de facto merger."

---

11. Plaintiff's argument that Albatrans' offering an employment contract to Chase Leavitt's President, Allison Leavitt, is sufficient to establish continuity of ownership, Pl.Mem. p. 5, is discussed below at pages 112–13 in connection with de facto merger.

12. *Schumacher* refers to the four exceptions and says: "Nothing in the record suggests liability under any of these theories. The only arguable basis upon which plaintiffs can predicate a finding of successor liability is to characterize [the purchaser] as a 'mere continuation' of [the seller]." 59 N.Y.2d at 245, 464 N.Y.S.2d at 440, 451 N.E.2d 195.

In *Ladjevardian*, Judge Lasker listed four requirements for finding a de facto merger:

> [T]o find that a de facto merger has occurred there *must* be a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation, *and* the assumption of liabilities by the purchaser. *Shannon v. Samuel Langston Company*, 379 F.Supp. 797 (W.D.Mich. 1974) [applying New Jersey law as set forth in *McKee* in 1970]. See generally, *Cortland Specialty Co. v. Commissioner of Internal Revenue*, 60 F.2d 937 (2d Cir.1932).

431 F.Supp. at 839 (emphasis added). This passage, which requires that all four of these factors be present, clearly means that a "continuity of stockholders" is necessary to find a de facto merger. *McKee* (which was, indirectly, the source of *Ladjevardian's* requirements) specified the same four factors as the key elements of a de facto merger. 109 N.J.Super. at 565–67, 264 A.2d at 104.[13] See page 100 below.

The Second Circuit adopted *Ladjevardian's* statement of the elements (including continuity of stockholders) that "must" be present for a de facto merger. *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F.2d 38, 42 (2d Cir.1985) (quoting the above passage from *Ladjevardian*).[14] *Arnold's* further holding that "there is no requirement that *all of the events that are necessary* to a finding of *de facto* merger occur at the same time," 775 F.2d at 42 (emphasis added), repeats the point that all four elements are required. The Second Circuit reiterated this point in *In re Augie/Restivo Baking Company, Ltd.*, 860 F.2d 515, 519–20 (2d Cir.1988), stating: "In *Ladjevardian* [full citation omitted], the *prerequisites* for a *de facto* merger were summarized.... Several of these *requirements* are unfulfilled in the instant case."

Accordingly, under *Arnold* (as under the rule in other jurisdictions[15]), continuity of

---

**13.** *McKee*, a products liability case, was applying a common-law definition of "de facto merger," derived from previous New Jersey cases concerning shareholders' rights. The New Jersey Supreme Court has since overruled *McKee* with respect to the successor liability standard to be applied in products liability cases. *See Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981). However, *Ramirez* covers only products liability cases. 86 N.J. at 358, 431 A.2d 811 at 824–25. It did not overrule *McKee* with respect to the traditional common-law definition of "de facto merger" in the areas in which the traditional standard continues to be applicable.

**14.** *Arnold*, a diversity case alleging a de facto merger between a New York corporation and its subsidiary, has been understood as applying New York law. *See State of New York v. Westwood–Squibb Pharmaceutical Co., Inc.*, 981 F.Supp. 768, 789 (W.D.N.Y.1997) (Curtin,

J.). Although this is not specified in the opinion, the facts in *Arnold* indicate the applicability of New York law with respect to the de facto merger issue. The plaintiff had obtained a judgment against the subsidiary. The New York parent corporation was not subject to in personam jurisdiction in Ohio (where the judgment was obtained). The issue in the Southern District action was "whether, as a result of a de facto merger, [the successor New York parent corporation] may be made to answer in New York for the liabilities of [the predecessor subsidiary]." *Arnold*, 1985 WL 211, *6 (S.D.N.Y.) (Haight, J.).

**15.** *See,* e.g., *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458–59 (11th Cir.1985, applying Georgia law) ("At the very least, there must be some sort of continuation of the stockholders' ownership interests."); *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir.1977, applying Ohio and Indiana law) ("Absent a

stockholders is required for a de facto merger under the traditional de facto merger exception. *See Shamis v. Ambassador Factors Corporation,* 34 F.Supp.2d 879, 898 (S.D.N.Y.1999) (Sweet, J., applying New York law in a trade creditor case) (quoting *Arnold's* requirements and holding that "the continuity of stockholders required for a finding of a de facto merger is not present here"); *McGillicuddy v. Laidlaw, Adams & Peck, Inc.,* 1995 WL 1081307, *11 (S.D.N.Y.) (Grubin, M.J., applying New York law in a judgment debtor case) (quoting the same requirements, citing *Ladjevardian,* and holding that "most importantly, there was no 'continuity of stockholders' between [the seller] and [the purchaser]."); *State of New York v. Westwood–Squibb Pharmaceutical Co., Inc.,* 981 F.Supp. 768, 787–88 (W.D.N.Y.1997) (Curtin, J.) (stating the *Arnold* factors and adding: "The *Arnold Graphics* court also ruled that all of these factors 'must' be satisfied."); *Town of Oyster Bay v. Occidental Chemical Corporation,* 987 F.Supp. 182, 205 (E.D.N.Y.1997) (Block, J.) ("Courts have not been willing to overlook the identity of shareholders requirement and have consistently refused to find that a *de facto* merger has taken place without such a showing."); *State of New York v. Panex Industries, Inc.,* 1996 WL 378172, *8 (W.D.N.Y. June 24, 1996) (Elfvin, J.) ("The United States Court of Appeals for the Second Circuit has consistently ruled that all of these factors 'must' be satisfied," citing *Arnold,* and holding that the "lack of continuity of ownership compels this Court to find that no *de facto* merger occurred").

*Arnold's* holding, that continuity of stockholders is required under the traditional "de facto merger" exception, is binding on the courts of this circuit applying New York law, unless the New York courts rule to the contrary. As discussed in sections 3(b) and 3(c) below, New York intermediate courts have expanded the "de facto merger" exception in products liability cases, and there is a question as to whether this expanded de facto merger exception is applicable outside the tort area. Before I proceed to that discussion, there are two issues, relating to the district courts' application of the rule in *Arnold,* which merit attention.

The first issue is whether the prerequisites specified in *Arnold* must be strictly applied. The Second Circuit has not ruled on this point. Since the "de facto merger" exception is intended to look at the substance, rather than the form, of the transaction, it seems that a degree of flexibility in the application of *Arnold's* requirements is appropriate where a factor is present in substance (although not in the specific form stated in *Arnold* ). For example, *Arnold* calls for a dissolution of the seller, but it seems reasonably sufficient if the seller has become an empty shell even though not dissolved. For a second example, *Arnold* calls for continuity of stockholders accomplished through payment in shares of stock, but it seems reasonably sufficient if (even though payment was not made in stock) the seller's shareholders are also shareholders of the purchaser. Whether the seller's owners acquire their

transfer of stock, the nature and consequences of a transaction are not those of a merger."); *National Gypsum,* 895 F.Supp. at 340–41 (D.Mass., applying Massachusetts law and citing cases from various jurisdictions); *Crawford Harbor Associates v. Blake Construction Co.,* 661 F.Supp. 880, 884 (E.D.Va.1987, applying Virginia law) ("The essential charac-

teristic of a de facto merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation."); Phillips, *Successor Liability,* 58 N.Y.U.L.Rev. at 912 ("Historically, the corporate law has been most persistent in regarding stockholder continuity as an essential element of de facto merger," citing cases).

ownership interest in the purchaser through payment in shares of stock or through other means, there exists in either case the essential inequity (which was the original basis of the "de facto merger" exception) that the seller's owners retain their interest in the transferred assets while cutting off the higher-priority interest of the seller's creditors.

Most courts applying the *Arnold* factors have followed this flexible (rather than formulaic) approach to determining whether a required factor is present in a particular case. This flexibility is, I believe, not in conflict with *Arnold*, but rather represents a reasonable interpretation of *Arnold* in accord with the purpose of the "de facto merger" exception.

The second issue, however, involves what appears to be a direct conflict with *Arnold's* holding that the four factors are required. Starting with *Lumbard v. Maglia*, 621 F.Supp. 1529 (S.D.N.Y.1985), there are a number of cases which state that not all of the factors are necessary to find that a de facto merger has occurred. In *Lumbard*, decided one month after *Arnold*, Judge Goettel, after reciting the four *Arnold* elements,[16] went on to say:

> "Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a *de facto* merger." *Menacho v.*

*Adamson United Co.*, 420 F.Supp. 128, 133 (D.N.J.1976). *See also* 15 *Fletcher, supra,* § 7165.5 at 339 (describing these as "[f]actors which are indicative of a de facto merger...").

621 F.Supp. at 1535.

It is possible to interpret this statement as referring to the factors in the strict form specified in *Arnold*, and as meaning merely that all of the factors are not required to be present in that strict form so long as they are present in substance.[17] As so interpreted, the statement can be viewed as merely incorporating a reasonable flexibility in the application of *Arnold's* requirements, and therefore as not being contrary to *Arnold*.

But the more obvious interpretation is that a complete absence of ownership continuity (or of one of the other factors) does not preclude a finding of de facto merger. Subsequent cases repeating *Lumbard's* statement appear to give it this meaning.[18] That this conflicts with *Arnold's* holding, and therefore is not the law in the Second Circuit, seems to have gone unnoticed by the courts in these cases. I have found only one case which mentions this discrepancy. In *State of New York v. Panex Industries, Inc.*, Judge Elfvin said:

> Many recent district court decisions have held that no single factor is determinative and that not every element

---

**16.** *Lumbard*, although citing *Arnold*, used somewhat different language (taken from Phillips, *Successor Liability*, 58 N.Y.U.L.Rev. at 909) which, inter alia, omits the specification that payment for the acquired assets be made with shares of stock, substituting a more general "continuity of ownership."

**17.** There appear to be several factors which were not strictly met by the complaint in *Lumbard*: ownership continuity (where Judge Goettel found the allegation of a somewhat indirect continuity to be sufficient), dissolution (the seller, although allegedly reduced to

a shell, had not actually dissolved) and assumption of liabilities (the opinion doesn't indicate the extent, if any, to which the purchaser assumed the seller's ordinary liabilities). Judge Goettel's subsequent use of the phrase "[e]ven if the amended complaint does not *thoroughly* describe every indicator of a *de facto* merger," *id.* at 1536, could be taken as indicating that the qualification was intended to deal with these deficiencies (although the context of the phrase also supports a contrary reading, *see* page 102 below).

**18.** *See* page 103 below.

need be satisfied in order to find that a *de facto* merger has occurred; other courts have held that continuity of ownership has traditionally been viewed as a key or essential factor under the *de facto* merger doctrine.... The United States Court of Appeals for the Second Circuit has consistently ruled that all of these factors "must" be satisfied.... *Arnold Graphics Indus. v. Independent Agent Ctr.* While other courts in this Circuit and similarly bound by the same precedents have chosen to evaluate the factors cumulatively and appraise the totality of the circumstances ... this Court concludes that this Circuit's rule requires the presence of all four elements to sustain a finding of a *de facto* merger.

1996 WL 378172 at *8.[19]

The controlling decision in *Arnold,* which forecloses the qualification that not all of the factors are needed, should obviate a need for further discussion of this issue. However, in view of the fact that the *Lumbard* statement has been repeatedly cited as applicable law, I believe that it is worthwhile to ask (a) where this statement came from, (b) what reason (if any) is offered to justify this departure from *Arnold's* requirements, and (c) how the statement has been applied in *Lumbard* and in the subsequent cases repeating the statement. The answers, in brief, are:

(a) It is a misapplication of a statement, taken out of context, from cases under New Jersey law.

(b) None. Neither *Lumbard* nor any of the cases repeating *Lumbard's* statement acknowledges the departure from *Arnold's* requirements or (with the exception of two cases omitting the ownership requirement in the product liability area[20]) gives any reason why ownership continuity should be optional rather than required.

(c) The general recitation of the *Lumbard* statement implies that the absence of ownership continuity could be outweighed by the presence of other factors, and the de facto merger analysis in *Lumbard,* and in a few of the subsequent cases, can be read as holding that ownership continuity is not required. However, neither *Lumbard* nor any of the subsequent cases repeating the statement (except the two products liability cases) actually finds a de facto merger in the absence of ownership continuity, or specifically holds that ownership continuity is not required.

The following pages explain these answers in greater detail.

As to the source of the *Lumbard* statement, the "not all of these factors are

---

19. *Panex* involved the application of the "de facto merger" test with respect to claims under CERCLA and under New York statutory and common law. In the quoted passage, Judge Elfvin was referring in particular to other CERCLA cases applying a diluted "de facto merger" test. But Judge Elfvin's description of the approach taken by those cases describes as well the approach taken by *Lumbard,* and a number of subsequent contract and creditor cases, to the "de facto merger" exception. Judge Elfvin's conclusion that this approach conflicts with the Second Circuit's decision in *Arnold* is equally applicable to *Lumbard* and its progeny.

20. *See Sweatland v. Park Corporation,* 181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept.1992); *Diaz v. South Bend Lathe, Inc.,* 707 F.Supp. 97, 100 (E.D.N.Y.1989) (McLaughlin, J.). These two cases (which are discussed in section 3(b) below in connection with the policy-based expansion of the "de facto merger" exception in products liability cases) cite *Lumbard,* but explicitly base their result on the policies underlying strict products liability.

needed" concept was first suggested in *Good v. Lackawanna Leather Company,* 96 N.J.Super. 439, 233 A.2d 201 (1967) (shareholders' rights), which was *not* referring to the *four* factors listed in *Ladjevardian, Arnold* and *Lumbard.* Rather, *Good* was referring to a list of *seven* factors which a previous New Jersey case, *Applestein v. United Board & Carton Corp.,* 60 N.J.Super. 333, 342, 159 A.2d 146 (Ch.Div.1960), *aff'd* 33 N.J. 72, 161 A.2d 474 (1960), had noted as being present in the corporate plan at issue. *Applestein* had said that those seven factors comprised "every factor present in a corporate merger," and had found that the plan was a de facto merger, but did not suggest that all seven factors were required. The opinion in *Good* says:

> Although *every element found by the court in Applestein may not be essential* in determining the existence of a[d]e facto merger, there are certain *key elements* existing therein which are not present in the case at bar. Significantly, there has been no exchange or transfer of shares between Good Bros. and Lackawanna. *A consolidation or merger always involves a transfer of the assets and business of one corporation to another in exchange for its securities.*

96 N.J.Super. at 452, 233 A.2d at 208 (emphasis added).

*McKee,* which reviewed a number of de facto merger cases from New Jersey (including *Good* and *Applestein* ) and other jurisdictions, correctly read *Good's* language as referring to the *seven* factors listed in *Applestein.* 109 N.J.Super. at 564–65, 264 A.2d at 103. *McKee's* finding

of no de facto merger was based on the absence of the same key elements (including ownership continuity) that were lacking in *Good.* 109 N.J.Super. at 565–67, 264 A.2d at 104 (1970). Under *McKee's* standard, stockholder continuity is required for a de facto merger.[21] *See* 109 N.J.Super. at 563–66, 264 A.2d at 103–104; *see also Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 342, 431 A.2d 811, 816 (1981) (discussing *McKee's* requirements).

The key elements of a de facto merger, as determined by *McKee,* were subsequently arranged in a formal list by a federal court, applying New Jersey law, in *Shannon v. Samuel Langston Company,* 379 F.Supp. 797, 801 (W.D.Mich.1974). *Shannon* listed *four* key factors—continuity of ownership, dissolution of the seller, and the seller's assumption of liabilities (the three key factors found absent in *Good* and *McKee* ) and also the purchaser's continuation of the seller's business (a factor present in *Good* and *McKee* ). While *Shannon* does not specifically identify these as requirements (describing them as "characteristics of a de facto merger, as distinguished from an ordinary purchase and sale of assets"), the opinion recognizes that an absence of ownership continuity is crucially important under the *McKee* criteria. The court in *Shannon* (finding all four elements to be present) held that there was a de facto merger, and distinguished the contrary result in *McKee* by saying: "Most importantly, *McKee, supra,* involved a situation in which the purchasing corporation paid for the assets principally in cash, so that the stockhold-

---

**21.** Indeed, *McKee* found that a token payment in shares of stock was insufficient to establish the required degree of stockholder continuity. The consideration paid to the seller included some shares of the purchaser's stock (in addition to almost $2 million in cash), but the court found that "[t]he shares paid as consid-

eration amounted, in fact, to only a negligible part of the total purchase price. Since the overwhelming portion of the consideration was cash, there was little, if any, continuity of stockholder interest in the purchasing corporation." *Id.*

ers of the seller never became a part of the purchasing corporation." *Id.* *Shannon* did not mention the *Good/McKee* qualification that not all of *Applestein's* factors were necessary .(which was presumably taken care of by the reduction of *Applestein's* seven-factor list to the four factors listed in *Shannon* ).

In *Menacho v. Adamson United Company,* 420 F.Supp. 128 (D.N.J.1976), the court adopted *Shannon's* list of *four* factors, and then went on to state: "Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger," citing *Good.* 420 F.Supp. at 133. By applying *Good's* statement (rephrased to eliminate *Good's* reference to *Applestein's* list of seven factors) to *Shannon's* list of four factors, *Menacho* changed the statement's meaning. However, it is clear that *Menacho* was *not* holding that the factor of ownership continuity is dispensable. *Menacho* states that "[e]ven the sale of the corporate business is liability free provided ownership and management have not remained the same" (*id.* at 133), and it refers to stockholder continuity as ."a prime ingredient in the *McKee* criteria for a de facto merger" (*id.* at 136). Lack of ownership was the major basis for *Menacho's* holding that there was no de facto merger; the court also noted the absence of liquidation of the seller, but stated that this "though a factor, is not dispositive," a limitation that was *not* stated with respect to the absence of ownership continuity. *Id.* at 134.

*Shannon's* list of four factors was subsequently adopted (with some variations in language) by Judge Lasker in *Ladjevardian* (1977, citing *Shannon* ) and by the Second Circuit in *Arnold* (1985, quoting *Ladjevardian* ). As discussed at page 97 above, *Ladjevardian* and *Arnold* require

that all four factors be present. Neither *Ladjevardian* nor *Arnold* cites *Menacho.*

Thus, neither *Good, McKee, Shannon, Menacho, Ladjevardian* nor *Arnold* suggests that ownership continuity is not a required factor.

In *Lumbard,* decided a month after *Arnold,* Judge Goettel imported into New York law the statement that "not all of these factors are needed to demonstrate a merger," citing the New Jersey decision in *Menacho. Lumbard,* like *Menacho,* states this qualification in conjunction with the four *Shannon/Ladjevardian/Arnold* factors, and also, like *Menacho,* simply sets forth the statement without discussing any reason *why* all four· factors should not be necessary. The *Lumbard* opinion, although citing *Arnold* with respect to the (somewhat rephrased) list of factors, does not acknowledge that *Arnold requires* that all four factors be present.

As to precisely what the *Lumbard* statement was intended to mean, Judge Goettel's actual holding as to continuity of ownership was:

> The amended complaint's allegation that [the seller's owners] engaged [one owner's] brother ... to assume nominal ownership of [the purchaser] is sufficient, at this stage, to plead continuity of ownership.

*Lumbard,* 621 F.Supp. at 1536. Later on the same page, the opinion says:

> Even if the amended complaint does not thoroughly describe every indicator of a *de facto* merger, it clearly describes the wholesale transformation of one company, Carla, into another, Maglia. The amended complaint alleges that Maglia continued the enterprise of Carla with the same employees, assets, and management. It further states that these transactions reduced Carla to a "shell." Amended Complaint ¶ 20. Viewed in a

light most favorable to the plaintiffs, these allegations are sufficient to state a *de facto* merger claim against Màglia. 621 F.Supp. at 1536. Judge Goettel's conclusion that a de facto merger claim was adequately stated can be read as including the ownership-continuity allegation which he described, earlier on the same page, as sufficient. *See Widerman v. Mayflower Transit,* 1997 WL 539684 (E.D.Pa.), in which there was no continuity of ownership (as well as problems with some of the other factors). The *Widerman* opinion states:

> The *Lumbard* court . . . concluded that the [ownership] continuity requirement was satisfied for the purposes of resisting a motion to dismiss by plaintiff's allegation that the predecessor corporation principals had arranged for the brother of one of the principals to assume nominal ownership of the successor corporation. *Id.* at 1536. No such continuity of ownership has been shown in the instant case. Thus, *Lumbard* is inapposite.

*Id.* at *6 n. 3.

On the other hand, *Lumbard's* highlighting of two allegations—as to business continuity and as to the seller's being reduced to a corporate shell—can be taken as meaning that those two allegations by themselves (without ownership continuity) would be sufficient to show a de facto merger. Several courts (as well as West's headnote writer) have apparently read *Lumbard* as so holding. It does not seem that this reading has actually changed the result in these cases (with the possible exception of the two products liability cases referred to in footnote 20 above). In two creditor cases—*Old Republic Insurance Company v. Hansa World Cargo Service, Inc.,* 51 F.Supp.2d 457, 477 (S.D.N.Y. 1999) (Edelstein, J.), and *Kessenich v. Raynor,* 120 F.Supp.2d 242, 255–56 (E.D.N.Y.2000) (Garaufis, J.)—a de facto merger claim was upheld against a motion to dismiss. In each case, the court's discussion of de facto merger appears to suggest that allegations as to *business* continuity are sufficient to state a de facto merger claim. But in each of these two cases (as in *Lumbard*), allegations of *ownership* continuity are mentioned elsewhere in the opinion, so the apparent suggestion was not necessary to the court's decision.[22]

A number of other contract and creditor cases have recited the statement that not all of the factors are needed (or words to similar effect).[23] In these other cases, the discussion of de facto merger includes the factor of ownership continuity, and thus these cases do not give the same appearance as *Old Republic* and *Kessenich* (and, arguably, *Lumbard*) of ruling that ownership continuity (in particular) is not required. None of these other cases finds a

**22.** In *Old Republic,* the plaintiff alleged that Duferco USA (one of several related defendant companies named Duferco) was the seller's principal. 51 F.Supp.2d at 463. In *Kessenich,* although it is not entirely clear from the opinion, it appears that the owner (Jeanne Raynor) of the predecessor (Raynor Country Day School) was also the incorporator and owner of the alleged successor (Raynor Country Day School II). 120 F.Supp.2d at 247.

**23.** *See,* e.g., *Freeman v. Complex Computing Company,* 931 F.Supp. 1115, 1122 (S.D.N.Y.

1996) (Kaplan, J.), *aff'd in part, vacated in part on other grounds,* 119 F.3d 1044 (2d Cir.1997); *McDarren v. Marvel Entertainment Group, Inc.,* 1995 WL 214482, *7 (S.D.N.Y.) (McKenna, J.); *International Private Satellite Partners, L.P. v. Lucky Cat Limited,* 975 F.Supp. 483, 486–87; *Marenyi v. Packard Press Corporation,* 1994 U.S.Dist. LEXIS 14190, *34–35 (S.D.N.Y.) (R & R by Katz, M.J.), adopted by *Marenyi v. Packard Press Corporation,* 1994 WL 533275 (S.D.N.Y.) (Haight, J.).

de facto merger where ownership continuity is absent, but their statement that not all of the factors are required (and sometimes other language in the opinions as well) can be read as contemplating a possibility that ownership continuity might not be required in some circumstances.

A number of district courts within the Second Circuit [24] and courts in various other jurisdictions [25] have recognized that ownership continuity is a requirement for the traditional "de facto merger" exception. Indeed, as discussed in the following section 3(b), the requirement of ownership continuity in the traditional definitions of "de facto merger" and "mere continuation" was the very reason why courts considered it necessary to develop new exceptions (or expand the traditional ones) in order to serve the policy objectives of strict products liability. However, in the cases which eliminated ownership continuity as a requirement in the products liability area (or in hazardous waste cleanup or the other areas mentioned in section 3(b)), the courts have discussed (usually at length) the specific policy reasons justifying the omission of the ownership continuity requirement. By contrast, *Lumbard, Old Republic* and *Kessenich* (and the other cases repeating *Lumbard's* statement) give no reason why the requirement of ownership continuity (or any of the other three factors) should be omitted in contract and creditor cases.

Some cases have found a de facto merger despite minor departures from the strict requirements.[26] However, my research discloses no case (in New York or other jurisdictions) in which a court has found a de facto merger without at least some degree of ownership continuity—except in the area of products liability (and the other tort areas mentioned in section 3(b) below) where some courts have justified new or expanded exceptions on special policy grounds. Outside of those areas, it appears that, in practice, ownership continuity has been essential to the finding of a de facto merger.

The requirement of ownership continuity does not exalt form over substance. The fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) *is* the "substance" which makes the transaction inequitable. There is nothing inherently wrong in a company's selling its business, or in the purchaser continuing the operation of that business. "When one company purchases all the assets of another, it is to be expected that the purchasing corporation will continue the operations of the former, but this does not by itself render the purchaser liable for the obligations of the former." *McKee,* 109 N.J.Super. at 570, 264 A.2d at 107. The de facto merger exception is "a judge-made device for avoiding patent injustice which might befall a party simply because a merger has been called something else."

**24.** See pages 97–98 above.

**25.** See footnote 15 above.

**26.** *See,* e.g., *McDarren v. Marvel Entertainment Group, Inc.,* 1995 WL 214482, *7 (S.D.N.Y.) (McKenna, J.) (sufficient that seller is a mere shell, actual dissolution not required); *Fitzgerald v. Fahnestock & Co., Inc.,* 286 A.D.2d 573, 730 N.Y.S.2d 70 (1st Dept. 2001) (same); *Atlas Tool Co. v. C.I.R.,* 614 F.2d 860, 871 (3d Cir.1980) (sufficient that seller's owner controls purchaser, payment in stock not required); *In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1010, 1014 (D.Mass.1989) (sufficient that payment was made in stock of parent company, rather than stock of purchaser); *Glynwed, Inc. v. Plastimatic, Inc.,* 869 F.Supp. 265, 271 (D.N.J. 1994) (no payment in stock, but sufficient ownership continuity where two minority shareholders of predecessor were also shareholders of successor).

*Philadelphia Electric Company v. Hercules, Inc.,* 762 F.2d 303, 312 (3d Cir.1985) (citation omitted). When a transaction, by calling itself an asset sale rather than a merger, attempts to retain the shareholders' interest while cutting off the creditors' claims, the resulting "patent injustice" calls for application of the de facto merger exception. If the transaction defrauds the seller's creditors, but there is no ownership continuity, it would appear not appear to be an instance where "a merger is called something else," but rather a transaction which, although not a merger, is a fraud. In such cases, it is not necessary to distort the "de facto merger" exception; successor liability would be more appropriately imposed under the fraud exception.

A holding that "not all of these factors are needed"—and that ownership continuity is optional, rather than required—would, in addition to conflicting with the Second Circuit's decision in *Arnold,* also be in conflict with (a) the cases under New Jersey law from which the statement was taken, (b) the original basis of the de facto merger exception (i.e., the inequity of the seller's shareholders retaining their interest in the transferred assets while cutting off the higher-priority claims of creditors), (c) numerous holdings, by courts within the Second Circuit and in various other jurisdictions, stating that a de facto merger requires ownership continuity, (d) the courts' actual practice, which appears to be that a de facto merger is never found without ownership continuity, except in the area of products liability and other tort

cases, (e) *Ladjevardian* and *McKee,* the two cases cited with approval by *Schumacher* on the related topic of "mere continuation," and, arguably, (f) the New York Court of Appeals' decision in *Schumacher* itself.[27]

(b) *Expanded Successor Liability in Products Liability Cases.* The traditional successor liability rule, designed for obligations that are primarily financial in nature, has been said to work well in the corporate contractual world in which it was developed. *Polius v. Clark Equipment Company,* 802 F.2d 75, 78 (3rd Cir.1986) (citing Phillips, *Successor Liability,* 58 N.Y.U.L.Rev. at 909). However, following the adoption of strict products liability, some courts concluded that the traditional rule (with its emphasis on corporate form and continuous ownership) did not adequately serve the policies underlying strict products liability and, on this basis, imposed an expanded successor liability in products liability cases.[28]

The leading case for the "continuity of enterprise" exception is *Turner v. Bituminous Casualty Company,* 397 Mich. 406, 244 N.W.2d 873 (1976), in which the Michigan Supreme Court wrote a long, reasoned opinion which makes very clear that the court is dealing *only* with products liability. The court said (a) that the public policy behind strict products liability is that "the enterprise, the going concern," ought to bear the liability for the damage done by its defective products, (b) that distinctions between types of corporate

---

**27.** As discussed at page 106 below, *Schumacher* appears to reject, even in the products liability area, the "continuity of enterprise" exception (which is merely the de facto merger exception without the requirement of ownership continuity).

**28.** Courts have also applied expanded successor liability, without a requirement of ownership continuity, in the areas of hazardous

waste cleanup (*see, e.g., B.F. Goodrich v. Betkoski,* 99 F.3d 505 (2d Cir.1996)), labor law (*see, e.g., Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973)), and employment discrimination (*see Musikiwamba v. ESSI, Inc.,* 760 F.2d 740 (7th Cir.1985)), basing their decision on specifically enunciated policy factors relevant to the area involved.

transfers are totally unmeaningful to the person injured by a defective product, and (c) that, in products liability cases, courts should disregard the distinction between a de facto merger and an asset sale. 397 Mich. at 416–24, 244 N.W.2d at 877–81.

*Turner*, after reviewing the four factors traditionally required for a de facto merger, established a different test for products liability cases. The test includes three of those factors: (a) continuity of management, personnel, physical location, assets and general business operation business (designated as the most important factor), (b) the seller ceasing ordinary business operations and liquidating as soon as possible, and (c) the purchaser assuming the obligations necessary for the uninterrupted continuation of normal business operations. For products liability cases, *Turner* excludes the remaining factor (continuity of shareholders). 397 Mich. at 429–30, 244 N.W.2d at 883.

One year later, the California Supreme Court similarly eliminated the requirement of ownership continuity in products liability cases, stating that "the paramount policy to be promoted by [strict products liability] is the protection of otherwise defenseless victims of manufacturing defects and the spreading through society of the cost of compensating them," and that "[t]he manufacturing entity's responsibility to the victims of defective products it has placed in circulation cannot be hostage to the niceties which distinguish a sale of assets from a merger." *Ray v. Alad Corp.*, 19 Cal.3d 22, 31, 560 P.2d 3, 9, 136 Cal.Rptr. 574, 579 (1977). *Ray*, taking a somewhat different approach than *Turner*, focused on whether the purchaser contin-

ued to manufacture the same products (the "product line" exception).

The New York Court of Appeals has not adopted either the "continuity of enterprise" exception or the "product line" exception.[29] In *Schumacher* (a products liability case), the Court of Appeals rejected the plaintiff's contention that successor liability could be imposed based upon either *Turner's* "continuity of enterprise" exception or *Ray's* "product line" exception, stating:

> We do not adopt the rule of either case [*Turner* or *Ray*] but note that both are factually distinguishable in any event.

*Schumacher*, 59 N.Y.2d at 245, 464 N.Y.S.2d at 440, 451 N.E.2d 195 (1983). This appears to be a rejection of the *Turner* and *Ray* exceptions, and several courts have so held. *See City of New York v. Charles Pfizer & Company, Inc.*, 260 A.D.2d 174, 176, 688 N.Y.S.2d 23, 25 (1st Dept.1999); *Radziul v. Hooper, Inc.*, 125 Misc.2d 362, 479 N.Y.S.2d 324 (N.Y.Sup. 1984); *Parra v. Production Machine Company*, 611 F.Supp. 221, 223 n. 2 (E.D.N.Y. 1985) (McLaughlin, J.); *Abrahamsen v. Laurel Gardens Limited Partnership*, 276 N.J.Super. 199, 211, 647 A.2d 869, 876 (Law Div.1993). However, one New York trial judge interpreted *Schumacher* as holding only that consideration of the two exceptions was not justified on the facts before it, implicitly leaving open the question of whether New York courts could adopt *Turner* or *Ray* on appropriate facts. *Salvati v. Blaw–Knox Food & Chemical Equipment, Inc.* 130 Misc.2d 626, 497 N.Y.S.2d 242 (N.Y.Sup.1985).

---

**29.** These exceptions have been rejected in most jurisdictions which have ruled on the issue. *See* Restatement (Third) of Torts: Product Liability § 12, Comment b (successor liability beyond the four traditional exception adopted by "a small minority of courts," but rejected by "a substantial majority"); *Id.*, Reporters' Note, Comment b (the "overwhelming judicial rejection of the liberating rules"); *Id.*, Reporters' Note, Comment c (listing jurisdictions which have rejected both *Turner* and *Ray*).

The First Circuit (applying New York law in a products liability case), reviewed the contrasting interpretations of *Schumacher*, and said:

> Were we pressed to decide which is the proper construction of [*Schumacher's*] language, we would conclude from our experience in writing and reading judicial opinions and our knowledge of common strategies of judicial decision-making and their articulation that the [New York] Court of Appeals, by the sentence in question, rejected the holdings of *Turner* and [*Ray*] and, in the alternative, put the issue to rest by pointing out that even if they were to be applied in *Schumacher*, they would not yield the result sought by the plaintiffs.

*Santa Maria v. Owens–Illinois, Inc.*, 808 F.2d 848, 858 n. 11 (1st Cir.1986).

However, two New York Appellate Division decisions in products liability cases (while bypassing the question of whether *Turner's* "continuity of enterprise" exception is foreclosed by *Schumacher*) achieved the same result as the "continuity of enterprise" exception by expanding the "de facto merger" exception to permit a de facto merger to be found in the absence of ownership continuity. *Wensing v. Paris Industries–New York*, 158 A.D.2d 164, 558 N.Y.S.2d 692 (3d Dept.1990); *Sweatland v. Park Corporation*, 181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept.1992).[30]

In *Wensing*, the Third Department, ruling as to de facto merger on a motion to dismiss, held—on the basis of information in the record that the purchaser acquired not just fixed assets, but also all intangible assets (such as good will, patents, customer lists, phone numbers and the seller's prior name)—that the plaintiff should have an opportunity to conduct discovery "on the extent of [the purchaser's] activities following the asset acquisition." There is no mention here of the other three de facto merger factors (continuity of ownership, dissolution of predecessor. and assumption of liabilities). The opinion appears to hold that continuation of the business is the dispositive factor with respect to de facto merger in a products liability case.

*Wensing* contains no acknowledgment that it is departing from the traditional requirements for finding a de facto merger. The legal basis for its ruling is not elaborated. The opinion merely quotes a dictum from the Court of Appeals' opinion in *Grant–Howard Associates v. General Housewares Corp.*, 63 N.Y.2d 291, 296, 482 N.Y.S.2d 225, 227, 472 N.E.2d 1 (1984), to the effect that the de facto merger and mere continuation exceptions "are based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased." 158 A.D.2d at 167, 558 N.Y.S.2d at 694. It may appear at first reading that the quoted dictum indicates approval of imposing successor liability simply on the basis that the purchaser acquired the business in its entirety (without regard to ownership. continuity). But the facts in the case, and the context in which the comment was made, show that the Court of Appeals did not intend to rule on this issue.[31] First, in Grant–Howard there

---

**30.** In a previous Eastern District products liability case, *Diaz v. South Bend Lathe, Inc.*, 707 F.Supp. 97 (E.D.N.Y.1989), Judge McLaughlin, applying New York law, had similarly found a de facto merger despite the absence of shareholder continuity, basing his decision on the products-liability-policy rea-soning in *Cyr v. B. Offen & Co. Inc.*, 501 F.2d 1145 (1st Cir.1974). Neither *Cyr* nor *Diaz* was cited by *Wensing* or by *Sweatland*.

**31.** In *Grant–Howard*, the defunct predecessor and its shareholders sought a declaration that the successor was required to defend and

*was* ownership continuity—the assets were paid for with shares of the purchaser's stock—and the three other traditional "de facto merger" factors were also fully present. *Second,* the issue before the Court of Appeals was not the standard to be applied in finding a de facto merger, but rather whether, given that successor liability had been established, the successor was obligated to indemnify the seller despite a contrary provision in the indemnity agreement. *Third,* in the paragraph containing the quoted comment, the Court of Appeals was merely describing products liability policy arguments that were referred to (but not relied upon) in the lower court's opinion, and the Court of Appeals states that the entire paragraph is irrelevant to the issue before the court. In addition, there is the fact that the Court of Appeals, having apparently rejected the *Turner* and *Ray* exceptions just a year previously in *Schumacher,* would be unlikely to choose this exceedingly indirect method of overruling or clarifying its *Schumacher* decision.

Two years after *Wensing,* the Fourth Department provided a somewhat more reasoned opinion in *Sweatland,* which also concerned a motion to dismiss. Although

there was no continuity of ownership, the court held that the plaintiff had raised an issue of material fact as to whether the transaction constituted a de facto merger, citing *Wensing. Sweatland* observes that the considerations underlying the corporate law doctrine of de facto merger are not relevant in the context of tort liability, and states:

> Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger. While factors such as shareholder and management continuity will be evidence that a de facto merger has occurred [citing *Ladjevardian* ], those factors alone should not be determinative.

181 A.D.2d at 246, 587 N.Y.S.2d at 56.[32] Although *Sweatland* held that a case-by-case analysis of the weight and impact of the factors is required, the opinion, like that in *Wensing,* mentions only facts relating to continuation of the seller's business (the acquisition of good will, customer lists and other intangibles, and the use of the seller's trade name).

indemnify them with respect to a product liability claim. The lower court opinion, 115 Misc.2d 704, 709, 454 N.Y.S.2d 521, 524 (N.Y.Sup.1982), sets forth the facts and states that the case "is a classic illustration of the presence of all the criteria." The opinion refers approvingly to policy arguments made in other products liability cases, but relies for its decision only on its determination that there was a de facto merger and also a mere continuation under the traditional standards (citing, inter alia, *Ladjevardian, Shannon* and *McKee* ). The court held that the successor, being subject to successor liability on the product liability claim, was required to indemnify. The First Department affirmed in a memorandum opinion. 97 A.D.2d 390, 467 N.Y.S.2d 1018 (1983).

The Court of Appeals opinion reversed the holding as to indemnification. Distinguishing

the issue of successor liability from that of indemnity, the Court of Appeals first discussed the subject of successor liability in product liability cases (in which discussion the comment quoted in *Wensing* occurs), and then went on to say: "All of this, however, is not relevant to the question of indemnification," which was the issue in the case.

**32.** While *Sweatland* is not specific as to the precise "public policy considerations" that underlie its decision, its citations in the preceding paragraph—to *Turner,* Phillips *Successor Liability,* 58 N.Y.U.L.Rev. 906, and *Knapp v. North American Rockwell Corp.,* 506 F.2d 361 (3d Cir.1974)—indicate that *Sweatland* is referring to arguments specifically related to products liability cases.

New York courts in subsequent products liability cases have similarly applied a de facto merger test apparently based solely on the degree to which the successor continues the seller's business (variously citing *Wensing, Sweatland,* and/or *Grant–Howard* ).[33] *See Winch v. Yates American Machine Company, Inc.,* 205 A.D.2d 1001, 613 N.Y.S.2d 980 (3d Dept.1994);[34] *City of New York v. Charles Pfizer & Company, Inc.,* 260 A.D.2d 174, 688 N.Y.S.2d 23 (1st Dept.1999); *City of New York v. Aaer Sprayed Insulations, Inc.,* 281 A.D.2d 228, 722 N.Y.S.2d 20 (1st Dept.2001). *Sweatland* has also been applied in a tort case outside the area of strict products liability.

*See Nettis v. Levitt,* 241 F.3d 186 (2d Cir.2001) (per curiam).[35]

Neither *Wensing* nor *Sweatland* suggests that its broad definition of de facto merger ought to apply outside the tort area.

(c) *In a Contract Case Brought by a Trade Creditor, Should the "De Facto Merger" Exception Be Broadened to Include a Transfer with No Continuity of Ownership?* With this background, we reach, at last, the central question in the case at bar: Does the broad definition of "de facto merger" (in particular, its elimination of the requirement of shareholder continuity), which intermediate New York

**33.** If *Schumacher* is interpreted as rejecting the "continuity of enterprise" exception set forth in *Turner,* there is a considerable question as to the rule adopted by *Wensing* and *Sweatland.* The expanded "de facto merger" exception applied in *Wensing* and *Sweatland* is the same as *Turner's* "continuity of enterprise" exception, which (as discussed at page 105 above) is the traditional "de facto merger" test with the requirement of ownership continuity eliminated. Indeed, *Schumacher* describes *Turner* as "based upon a balancing approach, where there has been a basic 'continuity of the enterprise' of the seller corporation [citing *Turner* ], an expansion of the traditional merger or consolidation exceptions ..." 59 N.Y.2d at 245, 464 N.Y.S.2d at 440, 451 N.E.2d 195. Neither *Sweatland* nor *Wensing* addresses the issue of (1) whether *Schumacher* rejected the "continuity of enterprise" exception and (2) if it did, whether either (a) the Court of Appeals' subsequent dictum in *Grant–Howard* effectively overruled that rejection, or (b) *Sweatland* and *Wensing* are sufficiently different from the "continuity of enterprise" exception to be unaffected by that rejection. Since the issue of the standard to be applied in product liability cases is not determinative in the case at bar, it is not necessary to resolve this issue.

**34.** Subsequently, the Third Department (without discussing *Schumacher's* ruling) adopted the "product line" exception. *Hart v. Bruno*

*Machinery Corporation.,* 250 A.D.2d 58, 679 N.Y.S.2d 740 (3rd Dept.1998).

**35.** The issue of *Sweatland's* applicability outside the tort area was not before the court in *Nettis.* The only claim involved in the *Nettis* appeal was a tort claim for violation of New Jersey's whistle-blower protection statute. The Second Circuit considered the successor liability issue under both New Jersey and New York law. The opinion says: "In both states, when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's *tort liabilities....* " 241 F.3d at 193 (citing *Sweatland* and a New Jersey tort case) (emphasis added). The only other case cited with respect to de facto merger is a products liability case, *City of New York v. Charles Pfizer & Co.,* 260 A.D.2d 174, 688 N.Y.S.2d 23, 24 (1st Dept. 1999) (relying on the questionable *Grant–Howard* dictum). Under these circumstances, it cannot be said that the Second Circuit ruled on whether *Sweatland* is applicable to non-tort cases. Additionally, I note that the Second Circuit apparently was not asked to consider the question (discussed in footnote 33 above) as to whether *Schumacher* forecloses the expanded "de facto merger" exception adopted by *Sweatland.,* The parties' appellate briefs in *Nettis* did not raise this issue, and *Schumacher* is not mentioned in the *Nettis* opinion.

courts have developed in the area of products liability, apply to a contract case brought by a trade creditor? A negative answer is suggested by a review of recent New York cases that consider the question of successor liability outside the tort area.

The First Department's decision in *Symbax v. Bingaman*, 219 A.D.2d 552, 631 N.Y.S.2d 829 (1st Dept.1995), reversed the lower court's imposition of successor liability with respect to a promissory note of the predecessor. The court stated:

> As plaintiff correctly concedes, the doctrine of successor corporation tort liability is not a valid basis for holding [the transferee] liable here; it is an extension of products liability and torts law (*Grant–Howard Assoc. v. Gen. Housewares*, 63 N.Y.2d 291, 296, 482 N.Y.S.2d 225, 472 N.E.2d 1) and is not applicable in an action to collect on a promissory note. In any event, none of the criteria for such liability as spelled out in *Schumacher* ... was established by the evidence.... [S]uccessor corporation liability is essentially a torts concept.

219 A.D.2d at 552–53, 631 N.Y.S.2d at 830–31. *See also Martorano v. Herman Miller, Inc.*, 255 A.D.2d 367, 680 N.Y.S.2d 20 (2d Dept.1998) (holding that successor liability based on de facto merger is relevant to products liability tort law but is inapplicable in an action to collect on a promissory note, citing *Symbax* ).

The broadly stated holding of *Symbax* —that successor liability (under the four standard exceptions stated in *Schumacher* ) applies only to tort cases—is, I believe, erroneous. Although *Schumacher* (a products liability case) spoke of tort liability, it was stating a common-law rule of successor liability. This common-law rule, with its *traditional* "de facto merger" exception, has long been applied to creditor and contract claims. *See*, e.g., *Ruedy v. Toledo Factories Co.*, 61 Ohio App. 21, 29, 22 N.E.2d 293, 296 (1939) (note creditor); *Arnold*, 775 F.2d 38 (2d Cir.1985) (judgment creditor); *Lumbard*, 621 F.Supp. 1529 (S.D.N.Y.1985) (trade creditor); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 271–72 (D.N.J.1994) (rejecting argument that the successor liability exceptions do not apply to commercial debt, and citing cases). However, despite its overstatement, *Symbax* can fairly be read as rejecting, outside of the tort area, successor liability theories that were specifically developed for products liability cases. Thus, it suggests that the *expanded* "de facto merger" exception developed in *Sweatland* for products liability cases should not apply to non-tort cases.

Two recent New York contract cases— *Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc.*, 275 A.D.2d 243, 712 N.Y.S.2d 526 (1st Dept.2000), and *Fitzgerald v. Fahnestock & Co., Inc.*, 286 A.D.2d 573, 730 N.Y.S.2d 70 (1st Dept.2001)—have (contrary to *Symbax's* overly broad statement limiting successor liability to the tort area) applied the "de facto merger" exception in determining that the complaint was sufficient to withstand a motion to dismiss. In both *Ladenburg* and *Fitzgerald* there was continuity of ownership, and thus neither court was called upon to consider whether *Sweatland's* holding that a de facto merger can be found in the absence of ownership continuity, "at least in the context of tort liability," 181 A.D.2d at 246, 587 N.Y.S.2d at 56, should be applicable to contract claims. *Ladenburg* cites *Sweatland* in connection with its finding that the plaintiff's "inartful pleadings intimate that a *de facto* merger was effected," but the court's preceding summary of the plaintiff's allegations includes the allegation that the corporation owning 72 percent of the purchaser also owned 20 percent of the seller. 275 A.D.2d at 248, 712 N.Y.S.2d at 530. *Fitzgerald* appears to be looking pri-

marily at the business continuity factors in its discussion of de facto merger (citing *Sweatland, Wensing* and the dictum from *Grant–Howard*). But, in its statement of the allegations on which the court based its conclusion that the allegations were sufficient to survive a motion to dismiss, *Fitzgerald* recites the allegation that the successor had acquired (prior to the transfer of assets) all of the predecessor's stock. 730 N.Y.S.2d at 72. Thus, neither *Ladenburg* nor *Fitzgerald* holds that a claim which lacks the element of ownership continuity is sufficient to state a de facto merger claim.

In sum, New York courts have not yet ruled on whether *Sweatland's* expanded "de facto merger" exception applies in a contract case. A number of courts in other jurisdictions have held that the expanded exceptions developed in products liability cases do not apply to contract and creditor claims. *See Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451–1458 n. 1 (11th Cir.1985) (trade creditor) ("Some courts, applying the de facto merger doctrine to products liability cases, have modified the requirements for finding a de facto merger.... Since the modification was carved out for products liability cases, it has no application here."); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 272 (D.N.J.1994) (breach of contract) ("It was because the traditional common law categories were considered too narrow in the strict products liability and labor law areas that the New Jersey courts, among others, have created broader exceptions in those areas. [Citations omitted.] But the traditional exceptions continue to be applicable to

various other areas, including claims for commercial debt...."); *Welco Industries, Inc. v. Applied Companies*, 67 Ohio St.3d 344, 348, 617 N.E.2d 1129, 1133 (Ohio Supreme Court 1993) (breach of contract) ("However valid the justifications for expanding the liability of successor corporations in products liability cases, those justifications do not apply here.").

The concept that doctrines developed specifically for products liability cases are inapplicable to contract cases was recognized, in a different context, by the New York Court of Appeals. In ruling on a statute of limitations issue in products liability cases, the Court of Appeals stated: "In these cases now before us we are concerned only with claims based on [strict products liability]. What we say here, therefore, should not be understood as in any way referring to the liability of a manufacturer of a defective product under familiar but different doctrines of the law of contracts...." *Victorson v. Bock Laundry Machine Company*, 37 N.Y.2d 395, 401, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275 (1975).

The reasons for imposing expanded successor liability in the area of products liability are not germane to the claims of trade creditors. Expanded successor liability in products liability cases was based on the underlying policy of ensuring that there is a responsible source to pay for the victim's injuries. While various laws protect creditors against fraud and other inequitable actions by the debtor,[36] there is no general policy of ensuring trade creditors against the risk that the company to which they extend credit may be unable to pay

---

**36.** Fraudulent conveyance laws provide a remedy where the debtor has transferred its assets for inadequate consideration, or with intent to defraud creditors. Where the debtor has transferred its assets in a purported asset sale but retains an ownership interest in the assets so transferred, relief may be obtainable under the well-established exceptions for "mere continuation" and "de facto merger." Additionally, the bankruptcy laws provide protection against various preferences and fraudulent acts.

its debts. As Judge Gertner stated in *National Gypsum*, "[s]uch insolvencies are the bread and butter of the bankruptcy courts and, while unfortunate, are the inevitable casualties of a competitive market economy." 895 F.Supp. at 334.

The creditors of an insolvent debtor can seldom expect to be paid in full. Such creditors have a right to demand that a sale of the debtor's assets will not decrease the amount available to pay creditors. But imposing successor liability (on the de facto merger theory) on a purchaser who continues the seller's business would not merely give an insolvent seller's creditors what they could have obtained in the absence of such sale. Rather, it would (assuming that the purchaser is solvent) give the creditors a windfall by increasing the funds available compared to what would have been available if no sale had taken place.[37] It is difficult to see any equitable basis for giving creditors this bonus. *See* Restatement (Third) of Torts: Product Liability § 12, Comment b (1997) (discussing this issue as an argument against imposing expanded successor liability in products liability cases).

Such windfalls to creditors would appear to be a problem primarily in the short run. If successor liability were to be imposed on a purchaser who buys substantially all of the seller's assets, there would be few, if any, purchasers willing to buy (as a whole) the assets of an insolvent debtor (since the purchaser would thereby become liable for obligations exceeding the value of the assets). Therefore, in the long run, it seems there would not be many occasions for imposing successor liability (and for providing the potential windfall to the seller's creditors) in such circumstances.

The long-run problem would appear to be that the imposition of such successor liability might have the undesirable result of *less* money being available to the seller's creditors. Ordinarily, one would expect that the seller's business would bring a higher price if sold as a going concern rather than at the liquidation value of the assets. *See National Gypsum*, 895 F.Supp. at 335; *Turner*, 397 Mich. at 428, 244 N.W.2d at 883. The imposition of expanded successor liability would make it difficult (if not impossible) for an insolvent company to sell its business as a going concern, and hence insolvent companies would likely be forced to dispose of their assets piecemeal at a lower price. *See Polius v. Clark Equipment Company*, 802 F.2d 75, 83 (3rd Cir.1986); Restatement (Third) of Torts: Product Liability § 12, Comment b, and Reporters' Note, Comment b.

For the various reasons expressed above, I believe that the New York Court of Appeals (regardless of what it might hold in strict products liability or other tort cases) would apply the traditional "de facto merger" exception in cases involving the claims of trade creditors, and would not adopt a definition of "de facto merger" which omitted the requirement of ownership continuity.

(d) *Adequacy of the Complaint's Allegations as to De Facto Merger.* In the case at bar, the Complaint sets out facts sufficient to allege one factor considered in determining whether there has been a de facto merger (the factor of continuity of business operations). But the Complaint fails to allege any of the other three factors. It does not allege that any of the owners of Chase Leavitt are also owners of Albatrans; it alleges only that Albatrans

---

**37.** Of course, if the consideration paid for the seller's assets is inadequate or the transaction is otherwise fraudulent, the creditors would be entitled to relief under the fraud exception and/or fraudulent conveyance statutes.

has given a five-year employment contract to Alison Leavitt, Chase Leavitt's president. Cplt. ¶ 10(v). A purchaser's employment of one or more of the seller's officers is not sufficient to show continuity of ownership.[38] The Complaint also fails to allege that Chase Leavitt has dissolved (or is to be dissolved as part of the transaction), or that Albatrans assumed any liabilities of Chase Leavitt.

▮ As stated above, I believe that the New York Court of Appeals would hold that some degree of continuity of ownership is required to find a de facto merger in a case involving trade creditors. However, even if ownership continuity is not a requirement, and is merely one of four factors to be weighed, I find that the Complaint's allegations, satisfying only one of the four factors, are insufficient to state a basis for a de facto merger.

Even if the Court were to take into consideration the fact (not alleged in the Complaint, but undisputed) that Ms. Leavitt is an owner of Chase Leavitt,[39] the Complaint does not allege that she is also a shareholder of Albatrans. Plaintiff argues that Albatrans' employment of Ms. Leavitt establishes continuity of ownership, Pl.Mem. p. 5, but cites no authority in support of this argument. Albatrans' con-

trary contention—that the terms of Ms. Leavitt's employment are, as a matter of law, irrelevant to Plaintiff's de facto merger claim—is similarly unsupported by citation to authority.

Indeed, there appear to be very few cases where the only basis for asserting ownership continuity is the purchaser's employment of one or more of the seller's owners. In *Freeman v. Complex Computing Company*, 931 F.Supp. 1115, 1120, 1122 (S.D.N.Y.1996), *aff'd in part, vacated in part on other grounds*, 119 F.3d 1044 (2d Cir.1997), Judge Kaplan held that, although the effective owner of the seller was employed by the purchaser, there was no continuity of ownership and no de facto merger.

The only detailed discussion of this issue which I have found is in *National Gypsum v. Continental Brands Corp.*, 895 F.Supp. 328 (D.Mass.1995), where Judge Gertner, applying the traditional "de facto merger" exception under Massachusetts law, provided a cogent explanation of the circumstances in which the terms of such employment might amount to the equivalent of an equity interest. Judge Gertner stated:

> While the evidence clearly shows that [the seller's] owners have no direct equity interest in [the purchaser] there is at

---

**38.** *See Ladjevardian*, 431 F.Supp. at 839 (transferor's president retained as a vice-president of transferee); *Travis v. Harris Corp.*, 565 F.2d at 447 (seller's president employed by purchaser in managerial position); *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir.1985) (some of seller's officers employed by purchaser); *Menacho v. Adamson United Company*, 420 F.Supp. 128, 134 (D.N.J.1976) (purchaser employed seller's vice president and another management-level employee); *Lopata v. Bemis Co., Inc.*, 383 F.Supp. 342, 345 (E.D.Pa.1974), *vacated*, 517 F.2d 1398 (3rd Cir.), *on remand*, 406 F.Supp. 521 (E.D.Pa.1975) (seller's vice president and director employed by purchaser).

**39.** This fact is established by § 5(c) of the Purchase Agreement, and acknowledged in both parties' briefs. Albatrans asserts that the Purchase Agreement can be considered on the motion to dismiss, as a document incorporated by reference. Alb.Mem. pp. 12–13. Since there is no indication that Plaintiff had seen the Purchase Agreement, or that it was available to Plaintiff, I do not believe that it can be considered incorporated by reference. Nevertheless, since Plaintiff clearly will be able to allege that Ms. Leavitt is an owner of Chase Leavitt, it seems more efficient to discuss now whether that allegation, together with the present allegation that she has been offered employment by Albatrans, would be sufficient to allege ownership continuity.

least some suggestion that they may be more than mere employees of [the purchaser].... [T]here is no·indication as to what financial interest [the seller's] shareholders have in [the purchaser's] future profits. The answer to this question is crucial since it will permit the Court to determine whether [the seller's] shareholders have, in any sense, retained a share in what was valuable in their former. company while avoiding any payment to products liability claimants.

*Id.* at 341. I find Judge Gertner's analysis to be persuasive.

In the case at bar, there is no allegation that Ms. Leavitt is anything more than a "mere employee," nor is there any basis in the Complaint's allegations for inferring that she is more than a "mere employee." Thus, I conclude that, even if the fact of Ms. Leavitt's ownership in Chase Leavitt were to be considered, the allegation as to her prospective employment by Albatrans is insufficient to.allege ownership continuity.[40]

5. *Conclusion as to Count I.* As discussed above, Count I fails to allege a basis for successor liability under either the "mere continuation" exception or the "de facto merger" exception. Nor does Count I allege a basis for successor liability under either of the two other exceptions: (a) if the purchaser expressly or impliedly agreed to assume such debt, or (b) if the transaction was entered into fraudulently in order to escape liability for such debt. There is no allegation of an express or implied assumption of liability by Albatrans. As to the fraud exception, which is "merely an application of the law of fraudulent conveyances"—*Grand Laboratories, Inc. v. Midcon Labs of Iowa,* 32 F.3d 1277, 1281 (8th Cir.1994); *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1426 (7th Cir.1993); Fletcher § 7125—although Count I does not allege fraud, Count VI alleges an intent to hinder, delay or defraud creditors. However, as discussed at pages 115–16 below, that allegation fails to meet the requirements of Rule 9(b).

Since the Complaint fails to allege a basis for successor liability under any of the four exceptions to the general rule of non-liability, it fails to state a claim on which relief can be granted. I recommend that the motion to dismiss be granted as to Count I. As noted above at page 91, footnote 3, Plaintiff does not require leave from the Court in order to file an amended complaint.

Since I conclude that Count I should be dismissed, it is not necessary to reach Albatrans' alternative motion for summary judgment. Although the Court has·discretion to consider the affidavits and exhibits submitted by the parties and to convert the motion for dismissal into a motion for summary judgment, I do not recommend that the Court do so. It appears preferable to see first whether Plaintiff files an amended complaint and whether, if Plaintiff does so, the amended complaint adequately alleges a basis for successor liability.[41]

---

**40.** ·Indeed, the Complaint does not allege Ms. Leavitt's employment by Albatrans as showing ownership continuity. Rather, this employment is alleged as an instance of Albatrans' using the same supervisory personnel as Chase Leavitt.· If the Complaint intends to allege that (as Plaintiff's brief asserts) such employment shows ownership continuity, such intention is obscure.

**41.** If the submitted evidence demonstrated that the filing of an amended complaint would be futile, then considerations of efficiency would suggest that the motion for summary judgment be considered at this time. However, while the facts set forth in the affidavits and their exhibits indicate that it is unlikely that Plaintiff will be able to establish

·D. *Counts II to V.*

Counts II to V seek recovery from "the defendants" on four grounds: services rendered at the behest of "the defendants," services rendered upon the promise of "the defendants" to pay the reasonable price for the same, an amount due from "the defendants," and an account stated between Plaintiff and "the defendants." Each of these counts re-alleges the Count I allegations relating to successor liability.

The factual allegations of the Complaint and the attached invoices make clear that it was only Chase Leavitt—and not Albatrans—which requested, promised to pay for, and was invoiced for these services. The Complaint does not allege any independent basis, apart from the alleged successor liability under Count I, for imposing liability on Albatrans.

With respect to Albatrans, Counts II to V are wholly dependent on Count I, and therefore I recommend that Counts II to V be dismissed as to Albatrans.

E. *Fraudulent Conveyance.*

Count VI of the Complaint asserts fraudulent conveyance claims under Sections 273 and 276 of the New York Debtor and Creditor Law. Cplt. ¶ 30.

Section 273 provides that a conveyance made "by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to actual intent if the conveyance is made ... without a fair

consideration." [42] The Complaint alleges, on information and belief, (a) that Chase Leavitt transferred assets to Albatrans on or about February 7, 2001, (b) that Chase Leavitt was insolvent at the time of the conveyance or was rendered insolvent by reason thereof and has since so remained, and (c) that the transfer was made for inadequate consideration. Cplt. ¶¶ 8, 25, 27. The Complaint does not allege any facts on which Plaintiff's belief is based.

Section 276 provides that a conveyance made "with actual intent ... to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors." [43] The Complaint alleges, on information and belief, (a) that Chase Leavitt transferred assets to Albatrans on or about February 7, 2001, (b) that the transfer was made in order to defraud plaintiff of monies justly due, and (c) that the transfer was made by Chase, Leavitt and received by Albatrans with the actual intent to hinder, delay or defraud either present or future creditors, particularly Plaintiff. Cplt. ¶¶ 8, 26, 29. The Complaint does not allege any facts on which Plaintiff's belief is based.

Albatrans contends that these allegations do not allege fraud with particularity as required by Rule 9(b), Fed.R.Civ.P.

■ The particularity requirements of Rule 9(b) apply to claims asserted under Sections 273 and 276 of the Debtor and

---

a successor liability claim, I cannot say that they show that this would be impossible.

**42.** Section 273 in full states:
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

**43.** Section 276 in full states:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors. The fraudulent nature of a conveyance may be inferred from the relationship among the parties to the transaction and the secrecy of the sale, or from inadequacy of consideration and hasty, unusual transactions.

Creditor Law. *Starmark, Inc. v. Zaccaria,* 1992 WL 209288 at \*2 (S.D.N.Y.) (Keenan, J.); *Lumbard v. Maglia, Inc.,* 621 F.Supp. 1529, 1538 (S.D.N.Y.1985) (Goettel, J.).

 Rule 9(b) provides: "In all averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity." In general, allegations of fraud based on information and belief do not satisfy the requirements of Rule 9(b). There is an exception as to matters peculiarly within the knowledge of the opposing party. As to such matters, allegations may be made on information and belief, but the allegations must be accompanied by a statement of the facts on which the belief is founded. *Stern v. Leucadia Nat. Corp.,* 844 F.2d 997, 1003 (2nd Cir.1988); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2nd Cir. 1987); *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). While a plaintiff "need not demonstrate in his complaint that what he believes to be true is in fact true," he must present facts that "show that his belief is not without foundation, that it is belief rather than irresponsible speculation." *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418, 423 (S.D.N.Y.1978) (Lasker, J.).

 The Complaint's allegations in Count VI are made entirely on information and belief. The matters alleged—intent to defraud, inadequate consideration, and Chase Leavitt's insolvency—are matters peculiarly within the knowledge of Defendants, and so do not fall under the general

prohibition against fraud allegations based on information and belief. However, the Complaint does not state any facts upon which Plaintiff's belief is founded, and therefore Count VI fails to meet the requirements of Rule 9(b).

In addition, the Section 276 claim fails to meet the specificity requirements of Rule 9(b) in another respect. Section 276 covers conveyances made "with actual intent" to hinder, delay or defraud creditors. The Second Circuit has held that "allegations of violating DCL § 276 must plead the requisite mental state with particularity." *Atlanta Shipping Corporation, Inc. v. Chemical Bank,* 818 F.2d 240, 251 (1987). With respect to allegations of fraudulent intent, the Second Circuit has held that scienter need not be alleged with great specificity, and that conclusory allegations of scienter are sufficient if supported by facts giving rise to a strong inference of fraudulent intent. *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993); *Ouaknine v. MacFarlane,* 897 F.2d 75, 79–80 (2d Cir.1990); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir. 1987). The Complaint does not allege any facts to support its conclusory allegation of fraudulent intent, and thus the Section 276 claim fails to meet the requirements of Rule 9(b) in this respect as well.

Since neither the Section 273 claim nor the Section 276 claim meets the requirements of Rule 9(b), I recommend that the motion to dismiss be granted as to Count VI.[44]

---

44. As with the successor liability claim (see page 114 and footnote 41 above), I do not recommend that the Court exercise its discretion to consider Albatrans' alternative motion for summary judgment. Albatrans has established that it paid *some* consideration, but the evidence (although providing circumstantial support) is insufficient to establish clearly that this constituted "fair consideration." Similarly, although the evidence shows circum-

### F. Bulk Transfer Act.

 Count VII of the Complaint alleges that Defendants failed to comply with the provisions of New York's Bulk Transfer Act, NYUCC §§ 6–101 et seq.

Albatrans contends that the Chiarelli Affidavit and the Purchase Agreement establish that the Bulk Transfer Act did not apply to the transfer of the Chase Leavitt assets. Alb.Mem. p. 21. I agree.

The Bulk Transfer Act (as in effect at the time of the transfer)[45] stated that it covered only enterprises "whose principal business is the sale or rental of merchandise from stock, including those who manufacture what they sell and restaurants or other food dispensing establishments." [Former] NYUCC § 6–102(3). "The businesses covered ... do not include ... professional services, nor [various specified service businesses] and the like whose principal business is the sale not of merchandise but of services." Official Comment to § 6–102, ¶ 2. See Tops Appliance City, Inc. v. Ronald G. Tepper, Inc., 1999 WL 1256250, *4 (S.D.N.Y. Dec.22, 1999) (Ellis, M.J.). The Tops defendant, whose business was developing customized computer software and related services, sold some hardware as part of its services, but "it was essentially a professional service not covered by the Act." Id.

The Chiarelli Affidavit states that Chase Leavitt is a service company that does not manufacture or sell products from stock, inventory or otherwise.[46] Chiarelli Aff. ¶ 3. Plaintiff does not dispute this, either in the Krauter Declaration or in Plaintiff's brief.[47]

I conclude that Albatrans has established that it is entitled to summary judgment on Count VII, on the ground that the Bulk Transfer Act did not apply to Chase Leavitt.

### G. Claims on Behalf of Affiliates.

The Complaint states that Plaintiff "is suing on its own behalf and on behalf of Cargo Partner, CR SRO (Praha, Czech Republic), Cargo Partner spedicija d.o.o. (Brnik, Slovenia), Cargo Partner Hungaria kft. (Budapest, Hungary) and Cargo Partner Spedycja Sp. z.o.o. (Raszyn, Poland)." Cplt. ¶ 1. Mr. Krauter, Plaintiff's

---

stances indicating an absence of fraudulent intent, it is nevertheless possible that Plaintiff may be able to allege his Section 276 claim with the specificity required by Rule 9(b).

**45.** Article 6 of the NYUCC (the Bulk Transfer Act) was repealed, effective July 1, 2001. 2001 Session Laws of N.Y., Ch. 84 § 20. Neither party's brief mentions the repeal or discusses what effect it may have. I find it unnecessary to consider such effect, since I conclude that, in any event, the transfer of Chase Leavitt's assets to Albatrans was not covered by the Bulk Transfer Act (as in effect at the time).

**46.** The affidavit also states, more specifically (1) that Chase Leavitt is licensed by the U.S. Customs Service as a customs broker which provides services to importers in connection with clearing their goods through U.S. Customs, and (2) that Chase Leavitt is also a freight forwarder which provides services to importers and exporters relating to the transportation of their goods. Chiarelli Aff. ¶¶ 2–3.

**47.** The sole contention made by Plaintiff's brief as to the Bulk Transfer claim is that the sale of the Chase Leavitt assets "was the kind of mischief envisioned by the Bulk Sales Law." Pl.Mem. p. 13. The brief sets forth a quotation from Committee of Unsecured Creditors of Interstate Cigar Co. v. Interstate Distribution, Inc., 184 Misc.2d 774, 710 N.Y.S.2d 858, 861 (N.Y.Sup., Nassau Cty.2000), relating to the opportunity for fraud where the seller becomes employed by the purchaser. That case involved a sale of inventory by a company whose business involved selling merchandise from stock. Neither the case, nor the quoted language, has any relevance to the issue of whether Chase Leavitt is primarily a seller of services and therefore not subject to the provisions of the Bulk Transfer Act.

sole owner, states that he is also the sole owner, either directly or through his ownership of Plaintiff, of these other four companies. Krauter Decl. ¶ 1. Albatrans contends that the claims asserted by Plaintiff on behalf of these subsidiary or affiliated companies must be dismissed. Alb. Reply Mem. p. 1, n. 1.

Since I recommend that Counts I to VI be dismissed under Rules 12(b)(6) and 9(b), and that summary judgment be granted as to Count VII, it is unnecessary to rule on this additional contention. Nevertheless, Plaintiff, if it intends to file an amended complaint, should note Rule 17(a), Fed.R.Civ.P., which provides that every action shall be prosecuted in the name of the real party in interest. Any amended complaint asserting claims on behalf of these companies should either include these companies as additional plaintiffs or provide facts establishing that Plaintiff may, under Rule 17(a), bring this action on their behalf

### III. CONCLUSION AND RECOMMENDATION.

I conclude that Count I fails to state a basis for imposing successor liability upon Albatrans. Counts II to V are wholly dependent on Count I insofar as they seek to impose liability on Albatrans. Accordingly, I recommend that Count I be dismissed, and that Counts II to V be dismissed as to Albatrans.

I conclude that Count VI fails to meet the requirements of Rule 9(b). Accordingly, I recommend that Count VI be dismissed.

With respect to Count VII, I conclude that Albatrans has established that it is entitled to judgment as a matter of law. Accordingly, I recommend that summary judgment be granted in favor of Albatrans as to Count VII.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to any part of this recommendation within ten business days by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Deborah A. Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within ten business days will preclude appellate review. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988). Any request for an extension of time must be addressed to the District Judge.

Nov. 21, 2001.